UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60326-CIV-MARRA/JOHNSON

BENNETT MARINE, INC.,
a Florida corporation,

      Plaintiff,

vs.

LENCO MARINE, INC.,
a Florida corporation, RINKER
BOAT COMPANY, a Delaware
limited liability company, RICHARD
DeVITO, JR., an individual, and KIM
SLOCUM, an individual,

      Defendants.

_____/

**OPINION AND ORDER**

      This cause is before the Court upon Defendant Kim Slocum's Motion to Dismiss for Lack

of Jurisdiction and Improper Venue [DE 174].  The Court has carefully considered the motion

and is otherwise fully advised in the premises.

I.  Background

A. The Second Amended Complaint

      On October 19, 2007, Plaintiff Bennett Marine, Inc. ("Plaintiff") filed a Second Amended

Complaint ("SAC") [DE 166] alleging Infringement of Patent against Defendants Lenco Marine,

Inc. ("Lenco") (Count I),[1] Richard DeVito, the president of Lenco (Count V), Rinker Boat

---

[1] Additionally, Plaintiff brings claims against Lenco for Breach of Settlement Agreement
(Count II), Fraud (Count III) and Unfair Competition (Count IV).

Company ("Rinker") (Count VI), and Kim Slocum ("Slocum"), the president of Rinker (Count VII).  Plaintiff owns a patent for a trim tab system which allows for trim tabs to automatically return to their fully retracted position upon termination or removal of power to the boat's engine. (SAC ¶¶ 17-18.)  The SAC alleges that Lenco, a Florida corporation and competitor of Plaintiff, manufactures, markets and sells trim tabs systems that infringe on Plaintiff's patent. (SAC ¶ 20.) Rinker, an Indiana-based company that manufactures and sells powerboats, purchases trim tab systems from Lenco. (SAC ¶¶ 3, 74.)  Rinker allegedly has installed and wired trim tab systems on its boats in a manner that infringes the patent. (SAC ¶ 79.)  According to the SAC, from 2004, Slocum was the "moving, active and conscious force behind Rinker's conduct" and "was personally responsible for Rinker's decision to continue installing and wiring Lenco trim tab systems in a manner that infringes the [ ] [p]atent and to continue marketing, selling and distributing boats that utilize the infringing trim tab systems." (SAC ¶¶ 88-89.)  Plaintiff claims that Slocum's conduct was "deliberate, knowing, willful and intentional."  (SAC ¶ 91.)

In asserting personal jurisdiction over Rinker, the SAC states that Rinker conducts business in Florida, purchases infringing trim tabs in Florida, ships powerboats that use the infringing trim tabs in Florida and sells powerboats that use the infringing trim tabs to purchasers in Florida.  In addition, Rinker representatives routinely come to Florida to promote the sale of powerboats that use the infringing trim tabs. (SAC ¶ 10.)  With respect to Slocum, the SAC alleges personal jurisdiction pursuant to Florida long-arm statute, Fla. Stat. § 48.193(b).  (SAC ¶ 12.)  Finally, the SAC states that venue is proper over Slocum under 28 U.S.C. § § 1391(b) and 1400(b) as he is a corporate officer who allegedly directs and controls the infringing conduct of a corporate defendant. (SAC ¶ 16.)

2

B.  Slocum's Evidence

In support of his Motion to Dismiss, Slocum submitted an affidavit. (DE 175-2.)  Slocum states that he is a resident of Indiana and does not own or rent property in Florida. (Slocum Aff. ¶¶ 1-3.)  He does not have a bank account or telephone listing in Florida and he does not receive mail in Florida, although he has made business trips to Florida. (Slocum Aff. ¶¶ 4-5, 12.)  Slocum has worked for Rinker for over 20 years, primarily as general manager. (Slocum Aff. ¶ 8.)  Slocum became president of Rinker in 2004 and routinely makes and participates in decisions affecting the day to day operations of Rinker. (Slocum Aff. ¶¶ 8, 29.)

Rinker's boats are manufactured in Indiana and sold throughout the United States as well as outside of the United States. (Slocum Aff. ¶ 10.)  When Rinker began purchasing the allegedly infringing trim tabs from Lenco in 2002, Rinker had no knowledge of Plaintiff's patent. (Slocum Aff. ¶ 14.)   The decision to purchase Lenco's trim tabs was made by Slocum, in consultation with other Rinker employees. (Slocum Aff. ¶ 15.)  According to Slocum, Rinker did not become aware of Plaintiff's patent until 2004, one year after it had begun purchasing Lenco's trim tab systems. (Slocum Aff. ¶ 17.)  Slocum states that he has "no personal knowledge that the installation and wiring of Lenco trim tab systems" on Rinker's boats infringes Plaintiff's patent. (Slocum Aff. ¶ 17.)

C.  Plaintiff's Evidence

Slocum testified in his deposition that, at some point, he was advised that Rinker should use a different wiring schematic for the trim tabs, but Rinker continued to use the same wiring schematic. (Slocum Dep. 59, Ex. E, DE 211.)  Lenco's president spoke to Slocum about the dispute with Plaintiff. (Devito Dep. 135, Ex. H, DE 211.)  Furthermore, the purchasing manager

3

for Rinker told Slocum that Plaintiff had a patent and that Rinker should change the wiring and installation technique, but Rinker declined to do so. (Slocum Dep. 64.)   Eventually, Slocum became aware that Plaintiff was threatening to sue Rinker over its trim tab systems. (Slocum Dep. 72.)  On December 17, 2004, Rinker and Lenco entered into an indemnification agreement, which Slocum signed as president of Rinker. (Indemnification Agreement, Ex. I.)

    D.  The Parties' Arguments

Slocum seeks dismissal of the SAC for lack of personal jurisdiction and improper venue. Specifically, Slocum claims the following: (1) he does not have sufficient contacts with Florida to support jurisdiction; (2)  his contacts with Florida are limited to his acts performed solely for the benefit of Rinker; (3) Rinker is not his alter ego and (4) the SAC does not allege that Slocum personally committed an intentional tort expressly aimed at Plaintiff in Florida.

In response, Plaintiff points out that the SAC alleges that personal jurisdiction over Rinker is proper because Rinker sells boats in Florida that infringe on Plaintiff's patent.[2] Therefore, according to Plaintiff, every time a Rinker boat is sold in Florida, Slocum commits a tortious act in Florida by inducing Rinker's infringement. Under this theory, an analysis of alter ego and piercing the corporate veil is irrelevant.  With respect to minimum contacts, Plaintiff contends that Rinker's minimum contacts with Florida are applicable to Slocum, who bears responsibility for Rinker's infringement. Plaintiff also argues that the jurisdictional issues are intertwined with the merits, making it impossible for the Court to resolve the jurisdictional issue at this time. In the alternative, Plaintiff seeks jurisdictional discovery.

In reply, Slocum states that personal jurisdiction is separate from personal liability,

_____

[2] Rinker has not moved to dismiss for lack of personal jurisdiction.

4

Slocum's acts are corporate conduct, that the allegations in the SAC do not constitute an

intentional tort expressly aimed at Plaintiff in Florida, that Slocum has insufficient contacts with

Florida and that adequate discovery has occurred.[3]

## II. Legal Standard

Personal jurisdiction in a patent infringement action is governed by the law of the Federal

Circuit.  Silent Drive, Inc. v. Strong Industries, Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003);

Deprenyl Animal Health, Inc. v .University of Toronto Innovations Found., 297 F.3d 1343, 1348

(Fed. Cir. 2002).  Prior to discovery, the plaintiff must only make a prima facie showing that the

defendant is subject to personal jurisdiction and the pleadings and affidavits must be "construed

in the light most favorable to the plaintiff." Silent Drive, 326 F.3d at 1201.  Here, Plaintiff asserts

specific jurisdiction over Slocum based on the allegation that Slocum committed the tort of

inducing patent infringement.  When specific jurisdiction is alleged, the Court must first look to

the state long-arm statute and determine that the party is amenable to service of process under

that statute.  Silent Drive, 326 F.3d at 1200; Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351,

1354 (Fed. Cir. 2002).  Once established, the Court then examines the due process requirements

under the United States Constitution.  World-Wide Volkswagon Corp. v. Woodson, 444 U.S.

---

[3] The Court notes that Defendant is correct that the SAC did not use the term
"inducement of patent infringement" nor did it allege Slocum's minimum contacts.  Plaintiff did,
however, provide an analysis of personal jurisdiction with respect to these two issues in its
response memorandum.  Significantly, Slocum addressed Plaintiff's arguments in its reply
memorandum, did not seek to amend its original motion to seek dismissal for failure to state a
claim, and did not claim prejudice.  As such, the Court has had an opportunity to consider all
arguments with respect to these issues. Nonetheless, in an effort to have a complaint that reflects
the claim for inducement infringement that is clearly being alleged by Plaintiff, Plaintiff should
amend the complaint to reflect that the count against Slocum is for inducement of patent
infringement.

286, 291 (1980); <u>International Shoe v. Washington</u>, 326 U.S. 310, 316 (1945).  In determining

whether due process is satisfied in a patent case, the Federal Circuit has identified three factors

for consideration:  1) whether the defendant purposefully directed its activities at residents of the

forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum;

and (3) whether assertion of personal jurisdiction is reasonable and fair.  <u>Silent Drive</u>, 326 F.3d

at 1201-02 <u>citing</u> <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (internal

quotation marks omitted).

The long-arm statute relied upon by Plaintiff, Florida Statute 48.193(1)(b), provides:

1) Any person, whether or not a citizen or resident of this state, who personally or through
an agent does any of the acts enumerated in this subsection thereby submits himself or herself
and, if he or she is a natural person, his or her personal representative to the jurisdiction of
the courts of this state for any cause of action arising from the doing of any of the following
acts:
(b) Committing a tortious act within this state.

Patent infringement is a tortious act and the tort occurs where the offending act is committed.

<u>North Am. Philips Corp. v. American Vending Sales, Inc.</u>, 35 F.3d 1576, 1578-79 (Fed. Cir. 1994);

<u>Orthokinetics, Inc. v. Safety Travel Chairs, Inc.</u>, 806 F.2d 1565, 1579 (Fed. Cir. 1986).  Selling an

infringing article to a buyer in Florida is to commit a tort there. <u>North Am. Philips</u>, 35 F.3d at 1578-

79. "[O]fficers of a corporation are personally liable for tortious conduct of the corporation if they

personally took part in the commission of the tort or specifically directed other officers, agents, or

employees of the corporation to commit the tortious act." <u>Orthokinetics</u>, 806 F.2d at 1579; <u>see</u> <u>White</u>

<u>v. Mar-Bel, Inc.</u>, 509 F.2d 287 (5th Cir. 1975).[4]  In other words, liability of corporate officials who

---

[4] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court
existed on September 30, 1981, handed down by that court prior to the close of business on that
date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and
the bankruptcy courts in the circuit.  <u>Bonner v. Pritchard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981)

actively aid and abet their corporation's infringement are subject to personal liability without regard to whether the corporation is the alter ego.  Power Lift, Inc. v. Lang Tools, Inc., 774 F.2d 478, 481 (Fed. Cir. 1985).  Section 271(b) of Title 35 provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  To prevail on a claim of inducement, the plaintiff must show that there has been direct infringement and that the infringer "knowingly induced the infringement and possessed specific intent to encourage another's infringement." MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005) citing Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

To determine whether the requirements of the Florida long-arm statute have been met, the Court must decide if the evidence demonstrates that Slocum committed the tort of inducement of patent infringement.  That determination clearly requires a decision on the merits of the case, including a finding that Plaintiff has shown direct infringement.  Indeed, if there has been no infringement of the patent, Slocum cannot have committed the tort of inducing Rinker's infringement.  Clearly, the Court cannot make that dispositive decision at this stage in the proceeding.  See ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd., 501 F.3d 1307, 1311 (Fed. Cir. 2007) (a determination of patent infringement is a question of fact). Nor have the parties submitted evidence on this point.

With respect to the remaining element, Plaintiff has alleged that Slocum was personally responsible for Rinker's decision to continue installing and wiring Lenco trim tab systems in a manner that infringes on Plaintiff's patent.  Plaintiff also submitted evidence that Slocum was informed that the use of Lenco's trim tab system infringed on Plaintiff's patent but Slocum

_____

(en banc).

7

refused to use a system that did not infringe on the patent.  However, to determine if this evidence shows Slocum intended to infringe on Plaintiff's patent, an inquiry into Slocum's intent is necessary. That question is also a factual one and certainly cannot be resolved prior to completion of  discovery.  Moreover, resolving this type of factual dispute may require credibility determinations best left for trial.  See Agfa Corp. v. Creo Prods. Inc., 451 F.3d 1366, 1378-79 (Fed. Cir. 2006) (intent often requires a credibility determination); Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1476 (11th Cir. 1991) (intent is question of fact for the factfinder); Whittimore v. Cruce, 479 So. 2d 761, 763 (Fla. Dist. Ct. App. 1985) (intent is question of fact).  Even keeping in mind that the parties have opted for a bench trial, the evidence presented does not allow the Court to decide these issues at this stage in the proceedings.

Likewise, the inquiry into minimum contacts raises the same quandary.  To determine Slocum's contacts with Florida, the Court must examine whether he purposefully directed his activities at residents of the forum and whether the claim arises out of or relates to his activities with the forum.  Silent Drive, 326 F.3d at 1201-02.  Surely if Slocum knowingly induced and encouraged Rinker's alleged infringement, minimum contacts with Florida could be established given Rinker's presence in Florida.  See Ideal Instruments, Inc. v. Rivard Instruments, Inc., 434 F. Supp. 2d 598, 614-15 (N.D. Iowa 2006) ("where . . .inducement of infringement involves the defendant's own actions in directing or encouraging infringement by another in a particular forum . . . it follows that the inducer has directed his activities at the forum just as certainly as the infringer has") (internal quotation marks and citations omitted). Thus, any inquiry relating to minimum contacts must resolve both the question of personal jurisdiction and the inducement

8

claim.[5]  In situations "[w]here the jurisdictional issues are intertwined with the substantive

merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide

one without the other.'" Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 733 (11th Cir. 1982)

quoting Chatham Condo . Assocs . v. Century Village, Inc ., 597 F.2d 1002, 1011 (5th Cir.

1979).[6]  Reaching the merits requires developing a full factual record relating to jurisdictional

issues. See id. at 729 ("federal courts have the power to order, at their discretion, the discovery of

facts necessary to ascertain their competency to entertain the merits.")  Accordingly, the Court

will exercise its discretion to reserve ruling on the jurisdictional issues until a decision on the

merits can be rendered.[7]  See Nissim Corp. v. Clearplay, Inc., 351 F. Supp. 2d 1343 (S.D. Fla.

2004) (since personal jurisdiction over corporate officer will turn on whether the plaintiff could

prove allegations that corporate officer actively induced patent infringement it is necessary to

defer ruling on jurisdictional issue until trial or summary judgment).

Typically, the Court decides the question of whether a defendant has purposefully

established minimum contacts within the forum state prior to deciding whether the assertion of

personal jurisdiction comports with "fair play and substantial justice."  Burger King Corp. v.

---

[5] The same is true for the parties' venue arguments.  If Plaintiff's allegations are true that
Slocum directed and controlled Rinker's infringing conduct in Florida (SAC ¶ 16), venue would
be proper here.  Hoover Group, Inc. v. Custom Metalcraft, Inc., 84 F.3d 1408, 1410-11 (Fed. Cir.
1996).

[6] Although Eaton and the binding Fifth Circuit cases upon which it relies address subject
matter jurisdiction, the Court concludes that the reasoning of these cases apply with equal force
to personal jurisdiction.

[7] Slocum may renew his argument in a summary judgment motion.  However, if genuine
issues of material of fact exist, then the issues will need to be presented at trial.  Lawrence v.
Dunbar, 919 F.2d 1525, 1530 (11th Cir. 1990).

Rudzewicz, 471 U.S. 462, 476 (1985); Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).  However, given that the jurisdictional issues will not be decided until the merits are reached, the Court believes that it is fair to the parties to determine the reasonableness and fairness of asserting jurisdiction over Slocum at this stage, assuming long-arm jurisdiction and minimum contacts are met.  In making that determination, the Court must evaluate "the burden on defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  Burger King, 471 U.S. at 477 citing World-Wide Volkswagon, 444 U.S. at 780 (internal quotation marks omitted).

Here, the Court finds that, assuming the other jurisdictional requirements can be met, assertion of personal jurisdiction over Slocum "comport[s] with fair play and substantial justice." Id. at 476 citing International Shoe, 326 U.S. at 320 (internal quotation marks omitted). Litigating this action against Slocum in Florida will not be a burden to Slocum.  As president of Rinker, Slocum will play a significant role in the defense of Rinker.  Indeed, Slocum, who has already been deposed as Rinker's corporate representative, will undoubtedly be a witness at trial and thus will not be unduly burdened by answering the claims against him in Florida. Furthermore, identical claims are being brought against Florida-based Lenco, Lenco's president and Rinker; therefore, adjudicating this dispute against all parties in Florida will provide Plaintiff with convenient and effective relief and will serve judicial efficiency on an interstate level. Lastly, Florida has a strong interest in adjudicating a dispute that involves two Florida-based companies.  For these reasons, the Court finds that the requirements of reasonableness and

10

fairness of asserting jurisdiction over Slocum have been met.

Nonetheless, Slocum argues that his conduct taken as a corporate officer cannot subject him to personal jurisdiction. He relies on Lane v. Capital Acquisitions and Management Co., No. 04-60602-CIV, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) for this contention. In that case, this Court found that since the alleged acts taken in violation of the Fair Labor Standard Act were not alleged to have been taken outside the defendants' duties as officers or owners of the corporation, those acts could not form the basis for personal jurisdiction in their individual capacity. Id. at * 4. Significantly, in making that ruling, the Court relied on Doe v. Thompson, 620 So. 2d 1004 (Fla. 1993) which held that corporate acts would be protected under the corporate shield doctrine. Doe did, however, note that a non-resident corporate officer could be haled into court in Florida if it is alleged that he personally committed an intentional tort expressly aimed at the plaintiff in Florida. Id. at 1006 n.1.

By proceeding under the theory of inducement infringement, Plaintiff has alleged a cause of action, under Federal Circuit precedent, that is not protected by the corporate shield doctrine. Orthokinetics, 806 F.2d at 1579; Power Lift, Inc. v. Lang Tools, Inc., 774 F.2d at 481. When an alleged tort exists solely by virtue of the federal patent statute, as it does here, its contours are defined by federal law, not Florida law. North Am. Philips, 35 F.3d at 1579. However, even under Doe, the cause of action for inducement infringement would pass muster. By alleging inducement infringement, Plaintiff has certainly alleged a tort. Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1575 (Fed. Cir. 1996) (noting that inducement infringement is a tort); National Presto Industries, Inc. v. West Bend Co., 76 F.3d 1185, 1196 (Fed. Cir. 1996) (same). While patent infringement may not always be an intentional tort, the facts alleged herein, if

proven, could support a finding by a factfinder that Slocum committed an intentional tort (SAC

¶ 91). See Auto Wax Co., Inc. v. Marchese, No. CIV.A. 301CV2571M, 2002 WL 1558376, *3

(N.D. Tex. July 15, 2002) (willful inducement of patent infringement is an intentional tort); cf.

Banks v. Public Storage Management, Inc., 585 So.2d 476, 477 (Fla. Dist. Ct. App. 1991)

(fraudulent inducement is an intentional tort).

The remainder of Slocum's arguments rest on his interpretation of the factual record as it

stands today.[8] As discussed supra, the Court has determined that the best course of action is to

allow the factual record to be fully developed prior to rendering a decision.

---

[8] In addition, Slocum points to several cases he claims declined personal jurisdiction over
a corporate officer charged with liability under 35 U.S.C. § 271(b). (Reply 4-5.) The Court finds
each of these cases unpersuasive. Amhill Enterprises Ltd. v. Wawa, Inc., Civ. A. No. HAR 93-
1349, 1994 WL 750535 (D. Md. Dec. 16, 1994) found no personal jurisdiction existed over an
out-of-state corporate officer based on the lack of any evidence presented by the plaintiff. Here,
the Court is not in a position to draw that conclusion on the current record. See Majd-Pour v.
Georgiana Community Hosp., Inc., 724 F.2d 901, 903 (11th Cir.1984); Eaton, 692 F.2d at 729.
Ristvedt-Johnson, Inc. v. Peltz, No. 91 C 3273, 1991 WL 255691 (N.D. Ill. Nov. 18, 1991)
simply provides a discussion of the Illinois fiduciary shield doctrine and did not examine Federal
Circuit precedent. SubAir Systems, LLC v. PrecisionAire Systems, Inc., No.1:06-026200-RBH,
2007 WL 2822910 (D.S.C. Sept. 27, 2007) could support a finding of jurisdiction here, assuming
the facts show that Slocum committed inducement infringement that led to sales of an infringing
product in Florida. SubAir relied on Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d
1558 (Fed. Cir. 1994) which held that the situs of an injury is the location where the sales of the
infringing product are made. Finally, Slocum's attempt to distinguish Nissim is unpersuasive.

<u>III.  Conclusion</u>

Defendant Kim Slocum's Motion to Dismiss for Lack of Jurisdiction and Improper

Venue [DE 174] is **DENIED WITHOUT PREJUDICE**.  Plaintiff is granted leave to amend the

SAC to reflect that the claim against Slocum is for inducement of patent infringement

     **DONE and ORDERED** at West Palm Beach, Palm Beach County, Florida this 3rd day of

April, 2008.


KENNETH A. MARRA
United States District Judge


copies to:
All counsel of record

13