UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60326-CIV-MARRA/JOHNSON

BENNETT MARINE, INC.,
a Florida corporation,

    Plaintiff,

vs.

LENCO MARINE, INC.,
a Florida corporation, RINKER
BOAT COMPANY, a Delaware
limited liability company, RICHARD
DeVITO, JR., an individual, and KIM
SLOCUM, an individual,

    Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Kim Slocum's Motion for Summary Judgment of Lack of Personal Jurisdiction or in the Alternative for No Inducement Infringement (DE 291). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

Plaintiff Bennett Marine, Inc. ("Plaintiff" "Bennett") alleges Defendant Kim Slocum ("Slocum"), President of Defendant Rinker Boat Company, LLC ("Rinker Boat") is liable for inducing patent infringement of Bennett's U.S. Patent 5,113,780 ("the '780 patent") under 35 U.S.C. § 271(b). (Third Am. Compl.)  On November 30, 2007, Mr. Slocum filed a motion to dismiss for lack of personal jurisdiction and improper venue. (DE 175.) The Court denied the

motion without prejudice. In denying the motion, the Court stated that a determination of personal jurisdiction was intertwined with the merits of the claim for the tort of inducement of patent infringement. Thus, it was necessary to decide whether Mr. Slocum intended to infringe Plaintiff's patent and that determination may require a credibility determination. Given that an adequate record did not exist for the Court to render a decision on the merits, the Court permitted Mr. Slocum to renew his motion at the summary judgment stage. The Court did, however, caution Mr. Slocum that if genuine issues of material fact existed, personal jurisdiction would be resolved at trial. (DE 251.)

The parties have now highlighted facts for the Court to consider at the summary judgment stage. These facts, as culled from affidavits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to Plaintiff, for the purposes of this Summary Judgment Motion, are as follows:

In or about the year 2002, Rinker Boat's predecessor began purchasing trim tabs from Defendant Lenco Marine, Inc. ("Lenco") that allegedly infringed on Bennett's patent. At the time, Rinker Boat's predecessor had no knowledge of the '780 patent. (Slocum Aff. ¶ 14, attached to DE 296.) On March 17, 2004, Bennett filed this lawsuit against Lenco. Neither Rinker Boat nor Mr. Slocum were parties to the suit. (DE 1.)

Richard Devito, Lenco's President, testified that he met with Mr. Slocum to discuss the dispute between Lenco and Bennett. Mr. Devito stated that Rinker Boat was provided with the settlement agreement between Lenco and Bennett and that he told Mr. Slocum and David Kleeman, Rinker Boat's purchasing manager, that Bennett and Lenco "have settled, not to hook it to the key switch." (Devito Dep. 135-36, 138, attached to DE 301.) Moreover, on October 12,

2004, Tom McGow, Bennett's sales executive, had a conference call with Mr. Slocum and Mr. Kleeman, Rinker Boat's purchasing manager, to discuss "patent infringement." (McGow Dep. 103-04 attached to DE 301; Ex. 42 to McGow Dep.)  Additionally, a few days later, Mr. McGow had another telephone call with Mr. Kleeman wherein they discussed Bennett's patent and the settlement agreement between Lenco and Bennett. (McGow Dep. 104.)  Blake Bennett, the president of Bennett, testified that he spoke with Mr. Slocum regarding the lawsuit between Bennett and Lenco, including the alleged infringement of the '780 patent. (Bennett Dep. 140, attached to DE 301.)

On November 23, 2004, Bennett transmitted a letter regarding the '780 patent to Mr. Slocum at Rinker Boat. (Slocum Aff. ¶ 18.)  After receipt of that letter, Mr. Slocum instructed Mr. Kleeman to call Rinker Boat's attorneys.  (David Kleeman Dep. 59, Ex. C, attached to DE 296.)  Mr. Slocum testified that "at some point, somehow we were made aware of the fact that we should use a different wiring schematic" when installing trim tabs. (Slocum Dep. 27, 58-59, 64, attached to DE 296 and 301.)

Mr. Slocum testified that he was at a "crossroads" regarding who the trim tab supplier would be, which gave rise to discussions with Lenco regarding indemnification. (Slocum Dep. 71-72; Devito Dep. 142.)  On December 17, 2004, Mr. Slocum and Lenco executed an indemnification agreement. (Ex I, attached to DE 301.)  After signing the indemnification agreement on Rinker Boat's behalf, Mr. Slocum continued to purchase trim tabs from Lenco and to wire them to the key switch so that the trim tabs would automatically retract upon removal of power from the engine. (Slocum Dep. 64, 72.)

Thereafter, Mr. Bennett left several voice messages on Mr. Slocum's voicemail to discuss

the alleged infringement.  Mr. Slocum did not return the telephone calls because he felt "no good could come of it" since the "decision had already been made to stay the course and not switch to Bennett trim tabs." (Slocum Dep. 103.)  Furthermore, Mr. Slocum stated that it would be "prudent" not to discuss the matter "since it seemed apparent that we were headed down a road of some sort of legal proceeding."  (Slocum Dep. 104.)  Mr. Slocum testified that had Bennett taken action against Rinker Boat, it could result in retaliation by the American Boat Builders Association, a group on which Mr. Slocum sits on the board of directors. (Slocum Dep. 1060, 106, 109-10.)

When asked why Mr. Slocum "refused" to stop wiring the Lenco trim tabs to the key switch or battery switch so that the trim tabs would automatically retract upon removal of power from the engine, Mr. Slocum testified that it would disable a "good feature" for his boats, "especially in salt water environments." (Slocum Dep. 59-60; Kleeman Dep. 63.)

Mr. Slocum describes himself as a "hands-on president" who previously worked as general manager of Rinker Boat for about twenty years, and has worked for 32 years in virtually every position at Rinker Boat. (Slocum Dep. 30.)   He makes decisions affecting the day-to-day operations of Rinker Boat and it was his decision to select Lenco as the supplier of trim tab systems. (Slocum Aff. ¶ 15; Slocum Dep. 33.)  Lenco has been Rinker Boat's supplier of trim tabs for approximately six years and every boat that Rinker Boat built with Lenco Retraction Devices had trim tabs that automatically retracted upon removal of power from the engine. (Slocum Dep. 59, 90.)  The Lenco trim tab systems used on boats manufactured by Rinker Boat are purchased from Lenco by Rinker Boat purchasing department employees, and installed by Rinker Boat manufacturing production employees. As of late 2007, Rinker Boat had over 500

4

employees. (Slocum Aff. ¶¶ 10, 15, 23.)

In or about May 2004, Mr. McGow and David Anderson, a Bennett representative, traveled to Rinker Boat to install a Bennett trim tab control system on Mr. Slocum's personal boat. (McGow Dep. 74.) To install the product, it was necessary for Mr. McGow to go underneath the helm of the boat and disconnect Lenco's retraction device by "disconnecting the trigger device from the ignition control of the boat." Prior to installing the product, Mr. McGow and Mr. Anderson shut off the ignition and "watched the trim tabs retract." (McGow Dep. 72-73.)

In moving for summary judgment, Mr. Slocum argues that the Court must make a determination of personal jurisdiction prior to reaching the merits. (Def. Memorandum at 7.) Furthermore, Mr. Slocum reiterates his argument that his conduct taken as a corporate officer cannot subject him to personal jurisdiction. (Def. Memorandum at 19.) Mr. Slocum also contends that the record does not reflect the necessary personal culpability to find him liable for inducement infringement. (Def. Memorandum at 9.)

## II. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this

regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

The Court begins its discussion by noting that the instant motion largely repeats the legal arguments previously presented to the Court on Mr. Slocum's motion to dismiss. Specifically, Mr. Slocum once again seeks a ruling from the Court on personal jurisdiction prior to ruling on the merits and re-argues that the corporate shield doctrine applies to the tort of inducement infringement.

To the extent that Mr. Slocum reads the Court's prior Order as allowing a re-litigation of these legal issues, he is mistaken. Although the Court denied the motion for dismissal on the basis of lack of personal jurisdiction without prejudice, the Court explained that it was reserving ruling on the jurisdictional issues until a decision on the merits could be rendered and cautioned Mr. Slocum that genuine issues of material facts could preclude resolution at the summary judgment stage.

As highlighted in the Court's prior Order, to prevail on a claim for inducement infringement, it is necessary to show that Mr. Slocum "knowingly induced the infringement and possessed the specific intent to encourage another's infringement."[1] MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005) citing Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1304-05 (Fed. Cir. 2002). That determination will require a credibility determination by the fact finder into Mr. Slocum's intent. See Fuji Photo Film Co., Ltd. v. Jazz Photo Corp., 394 F.3d 1368, 1378 (Fed. Cir. 2005) (in discussing the tort

---

[1] "[O]fficers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1579 (Fed. Cir. 1986).

of inducement infringement, "intent is a factual determination particularly within the province of the trier of fact."); see also Agfa Corp. v. Creo Prods. Inc., 451 F.3d 1366, 1378-79 (Fed. Cir. 2006) (intent often requires a credibility determination); Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1476 (11th Cir. 1991) (intent is question of fact for the factfinder); Whittimore v. Cruce, 479 So. 2d 761, 763 (Fla. Dist. Ct. App. 1985) (intent is question of fact).

With these principles in mind, the Court finds that the present record reflects factual disputes that must be dealt with at trial. Although Mr. Slocum suggests to the Court that he merely purchased the infringing trim tabs from Lenco and therefore did not possess the level of personal culpability necessary to be liable for inducement infringement, the Court finds that there is a factual dispute precluding resolution on this issue. The record evidence shows that Mr. Devito, Lenco's president, told Mr. Slocum that the trim tabs should not be hooked to the key switch pursuant to the settlement agreement between Lenco and Bennett. Furthermore, Mr. Slocum testified that he was made aware that his company should use a "different wiring schematic," but he did not change the wiring schematic because it would disable a "good feature." The record also contains evidence that would allow the fact finder to conclude that Mr. Slocum was aware that the method of installation of the Lenco device used by Rinker Boat could constitute infringement. Numerous telephone were exchanged between representatives of Bennett and Rinker Boat regarding the alleged infringement of Bennett's patent. Indeed, Mr. Slocum's testimony shows that he stopped returning telephone calls from Bennett because it was clear that a legal proceeding was eminent.

Based on that testimony, a factual dispute exists as to whether Mr. Slocum possessed the requisite intent necessary for inducement infringement. Indeed, the Federal Circuit affirmed a

jury verdict of inducement infringement against a former director (and later a consultant to an infringer corporation) where there was "circumstantial evidence" that the former director/consultant exerted control over the corporation and knew of the infringement allegations of the plaintiff.  Fuji Photo Film, 394 F.3d at 1378.  In making that ruling, the Court in Fuji Photo Film also noted that the evidence showed that the former director/consultant selected the factory where the infringing items were supplied and directed the company's business model.  Id.  Here, factual disputes exist relative to whether Mr. Slocum engaged in similar conduct.  Mr. Slocum testified that he made the day-to-day decisions affecting Rinker Boat, that he was aware of Bennett's infringement contentions, that he decided how the Lenco trim tab should be wired and that Mr. Slocum's personal boat had the trim tab installed in the allegedly infringing manner.

Significantly, Mr. Slocum's reply memorandum does not challenge the factual record highlighted by Bennett.  Instead, the vast majority of the reply memorandum is devoted to its assertion that the Court's previous legal determinations should be revisited.  To the extent that Mr. Slocum does attempt to characterize the factual record, he asserts that "knowledge of acts alleged to infringe does not support personal liability." (Reply at 7.)   That argument may carry weight at trial if the evidence supports that interpretation.  After observing the credibility of the witnesses, the Court will be a better position to determine whether Mr. Slocum merely knew of acts that constituted infringement or whether he acted with the specific intent to encourage Rinker Boat's alleged infringement.  Lastly, although Mr. Slocum makes much of Bennett's alleged failure to engage in discovery after the Court issued its ruling on the motion to dismiss for lack of personal jurisdiction, there was nothing to stop Mr. Slocum from proceeding with discovery to generate a factual record favorable to him.

For the foregoing reasons, the Court finds that genuine issues of material facts exist and summary judgment is inappropriate. At trial, Mr. Slocum can reassert his argument that personal jurisdiction is lacking and/or that the evidence does not support a finding of inducement infringement.

IV.  Conclusion

It is hereby **ORDERED AND ADJUDGED** that Defendant Kim Slocum's Motion for Summary Judgment of Lack of Personal Jurisdiction or in the Alternative for No Inducement Infringement (DE 291) is **DENIED**.

**DONE and ORDERED** at West Palm Beach, Palm Beach County, Florida this 21st day of January, 2009.

_____
KENNETH A. MARRA
United States District Judge