UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60326-CIV-MARRA/JOHNSON

BENNETT MARINE, INC.,
a Florida corporation,

    Plaintiff,

vs.

LENCO MARINE, INC.,
a Florida corporation, RINKER
BOAT COMPANY, a Delaware
limited liability company, RICHARD
DeVITO, JR., an individual, and KIM
SLOCUM, an individual,

    Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants Lenco Marine, Inc. and Rinker Boat Company's Motion for Summary Judgment on Invalidity (DE 292). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

    I.  Background

These facts, as culled from affidavits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to Plaintiff, for the purposes of this Summary Judgment Motion, are as follows:

On March 17, 2004, Plaintiff Bennett Marine, Inc. ("Plaintiff" "Bennett") filed this patent infringement suit against Defendant Lenco Marine, Inc. ("Defendant" "Lenco") alleging that

Lenco's Auto-Tab Retractor infringed U.S. Patent 5,113,780 (the '780 patent). (DE 1.) Bennett is alleged to own all rights, title and interest in and to the '780 patent. (Am. Compl., DE 253.)

David A. Hagstrom and Blake J. Bennett executed the Declaration for the Patent Application related to the '780 patent on August 23, 1990. (Declaration for Patent Application, Ex. B.) The application for the '780 patent was filed on August 30, 1990 and the '780 patent issued May 19, 1992 listing Mr. Hagstrom and Mr. Bennett as co-inventors and Bennett as assignee. ('780 Patent, Ex. A, attached to DE 292.)[1] Mr. Hagstrom developed the circuit that is shown as Figure 2 of the '780 patent and shown in a circuit drawing as early as May 10, 1989. (1989 Circuit Diagram, Ex. D; Hagstrom Dep. 72, Ex. F.)

Contemporaneously with the drawing dated May 10, 1989, Mr. Hagstrom conducted prototype testing of the circuit and boat trim tab system of Bennett's Auto Tab Retractor system ("ATR"). (Hagstrom Dep. 73-74, Ex. F.) As of the date of the May 10, 1989 drawing by Mr. Hagstrom, it was known that the circuit and boat trim tab system of the ATR would operate for its intended purpose. (Hagstrom Dep. 75-76, Ex. F.) On or about June 8, 1989, Bennett sent letters to circuit board manufacturers requesting quotes for the manufacture of production quantities of ATR circuit boards. (Hagstrom Dep. 83-86, Ex. F.) On or about July 17, 1989, Bennett Marine received information from Accutronics, Inc., a manufacturer of printed circuit boards, and subsequently received sample circuit boards from Accutronics, Inc. Bennett authorized Accutroinics, Inc. to complete an order of circuit boards for the ATR on or about August 16, 1989. (Hagstrom Dep. 86-97, Ex. F. and Dep. Ex. 115, 117 and 118.)

Mr. Nelson Wilner, Bennett's marketing manager, testified about a letter dated August

---

[1] Unless otherwise noted, all exhibits are attached to DE 292.

14, 1989. (Dep. Ex. 27.) The heading of this letter stated "Bennett Marine New Product Announcement." It does not include an address or a name to whom it is addressed. It did indicate an enclosure. The letter states as follows:

> Please find enclosed the promotional literature for the latest addition to the Bennett Marine product line: The Auto Tab Retractor . . . or as we call it, the "ATR."
>
> The ATR is a small electronic device installed behind the instrument panel designed to automatically retract the trim tabs when the boat's ignition is turned to the "off" position. The ATR was developed by our engineer, Dave Hagstrom.
>
> The ATR is currently in limited production, ramping up to full production and completed packaging by October 1st. We anticipate selling it in boxes of 10.
>
> The ATR will, of course, be on display in our booth at the Chicago IMTEC show.
>
> Feel free to contact me with any questions, comments or literature requirements.

(Dep. Ex. 27.)

Mr. Wilner testified that he did not remember whether August 14, 1989 reflected the date he wrote the letter or the date he sent the letter. (Wilner Dep. I 101, Ex. H.) He did, however, state that the date he wrote on letters was usually the same date that he sent letters and that it was more likely than not that this letter was sent out within one or two business days after August 14, 1989. (Wilner Dep. I 102, Ex. H; Wilner Dep. II 60, Ex. I.)

The phrase "limited production" meant that Bennett was "making samples" but was not "in production." The idea behind placing that information in the letter was "to make customers feel like they could get a sample in the near future . . . after October 1st." (Wilner Dep. I 105, Ex. H.) Mr. Wilner stated that the letter looked like a letter he would send to "after-market"

distributor customers[2] along with a new brochure[3] and other product literature. (Wilner Dep. I 101, Ex. H; Wilner Dep. II 5-6, 61, Ex. I.) Mr. Wilner explained that the letter was a "pre-alert," informing recipients that Bennett would have the ATR system on display at the upcoming boat show in Chicago. (Wilner Dep. II, 66, Ex. I.) The ATR was ready for market in late 1989 to early 1990. (Wilner Dep. I 45-46, Ex. E, attached to DE 305.) The letter and brochure would also let international customers, who did not attend the trade show, know that they could purchase the ATR. (Wilner Dep. II 60-61, Ex I.)

During Mr. Wilner's second deposition, he was asked to explain a hand written word on Deposition Exhibit 27. Mr. Wilner identified that word as "international or INTL," meaning that the letter went to international customers. (Wilner Dep. II 26, Ex. I.) He was also shown Deposition Exhibit 140, a similar letter to Deposition Exhibit 27. (Dep. Ex. 140.) Mr. Wilner explained that Deposition Exhibit 140 differed from Deposition Exhibit 27 in that it stated that Bennett "anticipated selling it to the aftermarket in boxes of 10." (Wilner Dep. II 27, Ex. I.) When asked if the two different versions meant that one version was sent to international customers and the other to customers within the United States, Mr. Wilner responded that it was "possible" but not "probable." (Wilner Dep. II 28, Ex. I.) Wilner "speculate[d]" that one version went to manufacturers' representatives and the other went to international customers. (Wilner Dep. II 28, Ex. I.) When asked if he could "definitively" state that he did not send the letter to

---

[2] These distributors would then sell to retail customers. (Wilner Dep. II 5-6, Ex. I.)

[3] Wilner testified that enclosed with the letter was a printed ATR product brochure produced by a professional printing company hired by Bennett for that purpose. (Wilner Dep. II 32-34, 61, Ex. I.) Despite that testimony, Mr. Wilner also stated that the brochure was first distributed at the Chicago IMTEC trade show which occurred September 7 through September 10, 1989 (Wilner Dep. II 30; Ex. F attached to DE 305.)

4

customers in the United States, he replied, "Definitively, no, but likely not." (Wilner Dep. II 29, Ex. I.) Mr. Wilner went on to explain that the inclusion of the engineer's name meant the letter was meant for a "closer group" of people than customers. (Wilner Dep. II 28-29, Ex. I.)

Blake Bennett testified that the automatic trim tab retractor was first introduced at the Chicago IMTEC boat and trade show. (Bennett Dep. 60, attached to DE 305.) The first sold unit was shipped on September 21, 1989. (Resp. to Interrog. No. 12, attached to DE 305.) All ATR products offered for sale by Bennett originated from its Florida facilities. (Wilner Dep. II 66, Ex. I.)

Lenco moves for summary judgment on the basis that the '780 patent is invalid. Lenco argues that Bennett has violated 35 U.S.C. § 102 by engaging in prohibited activities more than one year prior to the date of Bennett's application for a United States patent. These activities include: (1) offering to sell the device (2) ordering production quantities of the device from its supplier and (3) sending out a printed publication in the form of an advertising brochure describing the device. (Mot. at 7.) Lenco states that the critical date in this analysis is August 30, 1989, the date one year prior to the filing date.[4]

In response, Bennett states that Lenco has failed to produce clear and convincing evidence that any customers received the letter or brochure before the critical date. Moreover, Bennett points out that the evidence used by Lenco rests on the recollection of a witness dating back more than 15 years. Bennett further asserts that the evidence only suggests that the at-issue letters, if received by anyone, would have been received by an international customer, and would therefore be outside the scope of the statute. Bennett also argues that the letters did not rise to

---

[4] Bennett does not dispute that August 30, 1989 is the critical date. (Resp. at 10-11.)

the level of a commercial offer of sale and that the sale of a circuit board does not constitute a sale of a claimed invention because the circuit board is only part of the claimed invention.

## II.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead

must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. 242, 249-50.

III. Discussion

Section 102(b) of Title 35 of the United States Code provides that "a person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States"  35 U.S.C. § 102(b). "A determination that a product was placed on sale prior to the critical date is a conclusion of law based on underlying findings of fact."  Linear Tech. Corp. v. Micrel, Inc., 275 F.3d 1040, 1047 (Fed. Cir. 2001) citing Ferag AG v. Quipp, Inc., 45 F.3d 1562, 1566 (Fed. Cir. 1995).  "To prevail on an on-sale bar defense, an accused infringer must demonstrate by clear and convincing evidence that there was a definite sale or offer for sale of the claimed invention prior to the critical date." Linear, 275 F.3d at 1047.

In determining whether certain communications rise to the level of an offer of sale, the Federal Circuit has stated that "an offer is the manifestation of willingness to enter into a bargain,

so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Id. at 1050 quoting Restatement (Second) of Contracts § 24 (1981); see also Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simply acceptance . . . constitutes an offer for sale under § 102(b)"). Publication of promotional information does not constitute an offer for sale. Instead, that activity is indicative of preparation to place an item on sale and therefore does not implicate the on-sale bar. Linear, 275 F.3d at 1050. In examining language used by the patent holder in connection with an alleged sale, courts must look to see whether the product is being discussed prospectively, meaning as not yet available for sale. In that circumstance, such language will indicate there is not an offer for sale. Id. at 1051.

Although Lenco argues that the August 14, 1989 letter constitutes an offer, there are factual disputes which prevent the Court from reaching that conclusion as a matter of law.[5] First, the letter is not addressed to any particular individual or company, thus the Court cannot definitively conclude, as a matter of law, that the letter was sent to customers. If the letter was

---

[5] Lenco points out that the on-sale bar also requires that the invention be "ready for patenting." (Mot. at 12.) In making this argument, Lenco relies on Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67 (1998) which held that an invention is ready for patenting "by proof of reduction to practice before the critical date [ ] or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." Lenco contends that the development by Mr. Hagstrom of a prototype on or around May 10, 1989 reduced the invention to practice. It also contends that the circuit drawing created by Mr. Hagstrom showed that the circuit and boat trim tab system would operate for its intended purpose, and the actions taken by Mr. Hagstrom in an effort to get the circuit board manufactured are acts that meet the "ready for patenting" prong of the on-sale bar. It does not appear that Bennett challenges the argument that the "ready for patenting" prong is met.

not sent to customers but to Bennett's manufacturers' representatives, the letter might not be an offer for sale. Id. at 1050 (information sheets provided to domestic sales representatives and the foreign sales representative/distributors did not constitute an offer to sell when the informational sheets would help the recipients identify and familiarize themselves with customers who might be able to use the invention).  Here, Mr. Wilner testified that it was unlikely that the letter was sent to domestic customers and that it was more likely that the letter was sent to manufacturers' representatives and/or international customers.[6]  (Wilner Dep. 28-29.)  Of course, at trial, the fact finder will be able to assess Mr. Wilner's credibility on this point. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999) (the Court must "avoid weighing conflicting evidence or making credibility determinations").  Moreover, the fact finder will also need to consider Mr. Bennett's testimony that the automatic trim tab retractor was first introduced at the Chicago IMTEC boat and trade show and sold on September 21, 1989. (Bennett Dep. 60; Resp. to Interrog. No. 12.)  In any event, without knowing who received the letter, it is impossible for the Court to find, as a matter of law, that this was an offer.[7] Cf. Intel Corp. v. United States Trade

---

[6] Bennett claims that if an offer of sale was made to international customers, it would be outside the scope of the on-sale bar. It relies on B.F. Goodrich Co. v. Aircraft Braking Systems Corp., 825 F. Supp. 65 (D. Del. 1993) for this proposition.  (Resp. at 10.)  That case, however, involved an offer of sale made abroad, whereas here there is no evidence showing that the at-issue letter was not sent from the United States.  In contrast, Lenco relies on Robbins Co. v. Lawrence Mfg. Co., 482 F.2d 426, 434-35 (9th Cir. 1973) which held that an offer of sale made in the United States but consummated in a foreign country falls under the on-sale bar. (Reply at 3.) There is no Federal Circuit case on point, thus the Court will reserve ruling on this issue until trial. At trial, the fact finder will need to decide whether the letter was sent to international customers. Once that ruling is made, the Court will decide whether to apply Robbins.

[7] Bennett also argues that Lenco has not established that the language in the letter rose to the level of a commercial offer for sale. (Resp. at 15-18.)  In making this argument, Bennett points to language that it characterizes as promotional and designed merely to lay the groundwork for future offers.  That argument, however, goes to the legal determination as to

Commission, 946 F.2d 821, 830 (Fed. Cir. 1991) (finding that there was no clear and convincing evidence that a sale occurred based, in part, on the lack of evidence that any customers received the item allegedly offered for sale before the critical date).

The fact finder will also need to determine the date the letter was sent. Mr. Wilner testified that he did not remember whether August 14, 1989 reflected the date he wrote the letter or the date he sent the letter. (Wilner Dep. 101, Ex. H.) He did, however, state that usually the date he wrote on letters was the same date that he sent the letter out. (Wilner Dep. 102, Ex. H.) Significantly, there is no evidence before the Court demonstrating that anyone received the letter. Cf. id. Given that the date on the letter is close in time to the critical date, it is possible that a fact finder could conclude that the letter was not sent until after August 30, 1989.

Next, Lenco argues that when a patent holder purchases a product embodying the invention one year prior to filing the patent application from a supplier, the on-sale bar is met. (Mot. at 12.) Specifically, Lenco points to evidence that Bennett received circuit boards from Accutronics, Inc. prior to the critical date. Bennett responds that ordering a circuit board does not constitute a sale because the sale must be of the claimed invention as a whole. The Court agrees.

The case relied upon by Lenco, Special Devices v. OEA, Inc., 270 F.3d 1353 (Fed. Cir. 2001), is inapplicable to the undisputed facts here which concern the purchasing of a circuit board. In Special Devices, the patent holder contracted with a supplier to have the commercial embodiment mass-produced more than one year before the filing of the patent application. Id. at 1354. The patent holder argued that the on-sale bar had never been applied to sales by a supplier

---

whether the letter constitutes an offer for sale.

to an inventor.  The Federal Circuit held that there should not be an exception to the on-sale bar that would allow the stockpiling of the invention prior to filing the patent application. Id. at 1355-58.  Here, the evidence shows that Bennett was merely purchasing one component of its invention, not the invention in its entirety.

The Court next turns to Lenco's contention that Bennett's product announcement, i.e., the brochure, violated the printed publication prohibition in 35 U.S.C. § 102(b).  Whether a document is a "printed publication" is a "legal determination based on underlying fact issues." Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 936 (Fed. Cir. 1990). Pivotal to the determination that a document is "printed publication" is whether the document is "generally available." Id.  Given that there is some evidence that the brochure was mailed along with the August 14, 1989 letter, much of the analysis discussed supra will apply.  Specifically, there are questions of fact regarding whether the product announcement was mailed before the August 30, 1989 date.  Lenco has not produced any evidence that the brochure was received by anyone prior to August 30, 1989. Furthermore, there is evidence that the brochure was not released to the public until the trade show in September of 1989.  (Wilner Dep. II 30; Ex. F attached to DE 305.)  Thus, the record does not allow the Court to decide, as a matter of law, whether the invention was described in a printed publication prior to August 30, 1989.  Id. at 936-37 (affirming ruling that documents were not, as a matter of law, printed publications when there was uncertainty as to the public access to the documents); Depuy v. Zimmer Holdings, Inc., 343 F. Supp. 2d 675, 682 (N.D. Ill. 2004) (finding inadequate evidence of publication when the corporate representative's testimony was based on his assumptions about the printing and distributing of the corporate brochure); AT & T Corp. v. Microsoft Corp., No. 01-C4872, 2004 WL 292321, at

\* 6 (S.D.N.Y. Feb. 17, 2004) (deposition testimony where witness could not say with certainty whether a printed publication was actually distributed at a particular conference was insufficient to constitute clear and convincing evidence of publication date). Finally, Lenco's argument that the printed publication fully described the invention (Mot. at 18) also raises genuine issues of material fact.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants Lenco Marine, Inc. and Rinker Boat Company's Motion for Summary Judgment on Invalidity (DE 292) is **DENIED**.

**DONE and ORDERED** at West Palm Beach, Palm Beach County, Florida this 22nd day of January 2009.

_____
KENNETH A. MARRA
United States District Judge